647 F.2d 836
 Keith KUCHENBECKER, Special Administrator of the Estate of
the deceased, John L. Kuchenbecker, Appellant,
v.
NORTHERN WYOMING DRILLING COMPANY, a corporation, Joe Banks,
Loy Banks and Milo Wiseman, Appellees.
 No. 80-1601.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 13, 1981.
Decided May 6, 1981.
 
 Gene R. Bushnell, Rapid City, S. D., for appellees.
 Joseph M. Butler, Rapid City, S. D., for appellant.
 Before LAY, Chief Judge, ROSS, Circuit Judge, and VAN PELT,* Senior District Judge.
 PER CURIAM.
 
 
 1
 This is a wrongful death action brought by appellant Keith Kuchenbecker, special administrator of the estate of John L. Kuchenbecker, against Northern Wyoming Drilling Co. (Northern Wyoming), Joe Banks, Loy Banks, and Milo Wiseman. Joe Banks and Loy Banks were the sole shareholders and principal officers of Northern Wyoming, and Milo Wiseman was a foreman employed by Northern Wyoming. The district court granted the three individual defendants summary judgment, and then proceeded to a trial against Northern Wyoming. A judgment was entered against Northern Wyoming pursuant to a jury verdict in favor of plaintiff for $175,000. Kuchenbecker appeals from the order granting summary judgment to the three individual defendants. We agree that entry of summary judgment was erroneous; we vacate the judgment entered and remand for further proceedings.
 
 
 2
 In the fall of 1978, Northern Wyoming contracted to drill a water well in Philip, South Dakota, and hired John Kuchenbecker as a laborer. Milo Wiseman was job foreman. Plaintiff's complaint alleges that the defendants were negligent in various particulars.[1] The depositions submitted to the court at the time of the motion for summary judgment generally show that on December 29, 1978, a pressure pump at the well site exploded, killing Kuchenbecker. The explosion was allegedly due to the malfunction of a safety valve designed to prevent excessive pressure in the pump. The valve allegedly failed because a device used to set the automatic discharge pressure level had broken several days before and because the valve may have frozen in sub-zero temperatures. Northern Wyoming had not enclosed the pump to protect it from low temperatures.
 
 
 3
 Northern Wyoming elected not to carry worker's compensation insurance coverage and thus was subject to suit by its employees under the common law. S.D. Codified Laws § 62-3-11. The three individual defendants were sued in their individual capacities as co-employees of Kuchenbecker.
 
 
 4
 The district court held that the defendants "Joe Banks, Loy Banks and Milo Wiseman were acting within their corporate supervisory capacities at the time of the accident in question and therefore under South Dakota law are not subject to common law liability for the death of Plaintiff's decedent." The court relied upon Blumhardt v. Hartung, 283 N.W.2d 229 (S.D.1979).[2]
 
 
 5
 In Blumhardt, as well as in Wilson v. Hasvold, 86 S.D. 286, 194 N.W.2d 251 (1972) the South Dakota Supreme Court held that an employer's immunity from common law liability, which arises from the availability of worker's compensation, also extends to any co-employee, partner, officer or director of such employer, for acts taken within the ambit of corporate responsibility. The parties are in disagreement as to whether the district court granted summary judgment in mistaken reliance upon Blumhardt's worker's compensation immunity doctrine or ruled that regardless of the presence of worker's compensation, an employee cannot be held individually liable for the breach of duties that are the employer's responsibility. The order of the district court is not clear in this regard. Nonetheless, under either line of reasoning we hold the district court erred in granting summary judgment.
 
 
 6
 As indicated, Blumhardt holds that where an employer elects to provide worker's compensation, the employer's immunity also extends to the individual employees for injuries occurring because of working conditions that were the employer's responsibility. As stated in Blumhardt: "Injuries resulting from their failures in that capacity have been compensated under the worker's compensation law. The umbrella of immunity extends accordingly." 283 N.W.2d at 232 (footnote omitted).
 
 
 7
 Of course, Blumhardt and similar decisions are not controlling here since the employer has elected to have no worker's compensation coverage. Under these circumstances, there is no employer immunity from which the employees can derive immunity.
 
 
 8
 Defendants urge that the district court held that even in the absence of worker's compensation, under South Dakota law employees cannot be held individually liable for a breach of an employer's duty to provide safe working conditions. We need not pass judgment on the validity of this legal theory, for in the absence of an evidentiary record we think to do so would be premature. Even if the legal theory is correct, under the complaint and depositions within the record summary judgment was improper here. It is sufficient to note that under South Dakota law, it is clear that "an employee defendant may be individually liable insofar as his personal negligence caused or contributed to plaintiff's injuries." Wilson v. Hasvold, 194 N.W.2d at 255. In this factual context, the Restatement of Torts (Second) § 324A is relevant to determining whether there have been sufficient allegations of personal negligence:
 
 
 9
 Liability to Third Person for Negligent Performance of Undertaking.
 
 
 10
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 
 
 11
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 
 
 12
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 
 
 13
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 
 
 14
 See also Comment d, Illustration 3.
 
 
 15
 In this case, plaintiff's complaint and depositions provide direct and inferential factual support to Kuchenbecker's contention that foreman Wiseman was directly responsible for safety at the drilling site, was aware of the defective condition of the pressure-setting device and took no steps to repair it or to warn the employees of the danger. Kuchenbecker also alleged that Joe and Loy Banks were Wiseman's immediate supervisors and assumed responsibility for the equipment and safety conditions at the drilling site. Nevertheless, they allegedly did nothing to protect the pump from the cold weather or to warn other employees of the hazards arising during freezing weather. These allegations raise material issues of fact as to personal negligence by the defendants arising from responsibilities they assumed and the breach of the duties arising from those responsibilities. Whether plaintiff can prove the defendants owed the decedent a duty and whether he can factually prove that the defendants negligently violated any duty remains to be decided. See Wilson v. Hasvold, 194 N.W.2d at 255 (reversing summary judgment due to issue of fact as to personal negligence).
 
 
 16
 The factual issue in dispute relates to whether plaintiff can prove the individual defendants have breached any duty. This is a mixed question of fact and law and depends upon the factual circumstances involved. Here, although the complaint is highly conclusory the evidence remains to be spread on the record. Although we pass no judgment on the legal issue, we think it sufficient to observe that the testimony within the depositions does not conclusively establish the absence of personal negligence by the defendants. As we have often noted, "Summary judgment is a harsh remedy and is to be granted sparingly ", McLain v. Meier, 612 F.2d 349, 355 (8th Cir. 1979). We again reiterate, as we have so often done, that unless factual issues are completely absent, it is a much better practice for the district court to submit negligence issues to a jury. Williams v. Chick, 373 F.2d 330 (8th Cir. 1967). Here it was clear that the case would proceed to trial against Northern Wyoming. In the interest of judicial economy it would have afforded little detriment to the time of the court or defendants to submit the liability of all defendants to the jury. If the court concluded after the verdict that there was no proof of a duty or breach of duty, any erroneous verdict could have been corrected by a judgment notwithstanding the verdict. In the words of Judge Sanborn, written 28 years ago:
 
 
 17
 It is safe to say that in a case such as the one before us, it is unwise for a trial judge to direct a verdict at the close of the plaintiff's evidence. We think that, even though the trial court is of the opinion that the evidence will not support a verdict for the plaintiff, the court should ordinarily reserve its ruling on a motion for a peremptory instruction until after verdict. That course will usually hasten the ultimate termination of the litigation and best serve the interests of both parties. The jury's view of the sufficiency of the evidence may coincide with that of the court. If it does not, the court, despite the verdict, can enter judgment for the defendant. An appeal from such a judgment, entered after verdict, will usually terminate the controversy one way or the other, and avoid a retrial with its resulting delay, trouble and expense and the possibility of a second appeal. Compare, Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573-574, 71 S.Ct. 428, 95 L.Ed. 547.
 
 
 18
 Barnett v. Terminal Railroad Association, 200 F.2d 893, 896 (8th Cir.), cert. denied, 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377 (1953).
 
 
 19
 We have long adhered to this rule and we repeat it here for emphasis to avoid recurrence of the problem. See Parker v. Seaboard Coastline Railroad, 573 F.2d 1004, 1006 n.3 (8th Cir. 1978); Hladyshewski v. Robinson, 557 F.2d 1251, 1255 n.3 (8th Cir. 1977); Holmgren v. Massey-Ferguson, Inc., 516 F.2d 856, 859 n.2 (8th Cir. 1975); Tiedeman v. Chicago, Milwaukee, St. Paul & Pacific Railroad, 513 F.2d 1267, 1271 n.4 (8th Cir. 1975); Hoppe v. Midwest Conveyor Co., 485 F.2d 1196, 1198 n.1 (8th Cir. 1973); Passwaters v. General Motors Corp., 454 F.2d 1270, 1272-73 (8th Cir. 1972); Stofer v. Montgomery Ward & Co., 249 F.2d 285, 291 (8th Cir. 1957); Homolla v. Gluck, 248 F.2d 731, 732 n.1 (8th Cir. 1957); Frank B. Connet Lumber Co. v. New Amsterdam Casualty Co., 236 F.2d 117, 127 (8th Cir. 1956).
 
 
 20
 Under the circumstances, we have no alternative but to remand to the district court for a new trial against the individual defendants. The judgment of the district court is vacated and remand is ordered to the district court in accord with this opinion.
 
 
 
 *
 Robert Van Pelt, Senior District Judge, District of Nebraska, sitting by designation
 
 
 [1]
 Paragraph VII of the complaint reads:
 On December 29, 1978, and for some time prior thereto, the defendants were negligent in failing to maintain a safe place to work, in failing to safely and properly operate and maintain their equipment, in failing to furnish equipment which was reasonably safe and in failing to give appropriate safety instructions to their employees and were otherwise negligent. As a direct and proximate result of said negligence, the plaintiff's decedent was killed while working in the employment of the defendants on December 29, 1978.
 
 
 [2]
 In 1977, subsequent to the accident in question in Blumhardt, the South Dakota legislature enacted S.D. Codified Laws § 62-3-2, providing:
 The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, officer or director of such employer, except rights and remedies arising from intentional tort.